DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

YUSEF I. JABER,

                        Plaintiff,                    2002-CV-0155

    v.

SUFIAN ABDALLAH,

                        Defendant.

TO:    Edward L. Barry, Esq.
         Warren B. Cole, Esq.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for bench trial on October 12, 2007. Edward L. Barry, Esq., represented Plaintiff. Warren B. Cole, Esq., appeared on behalf of Defendant.

Having considered the evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

1.      The parties agree that Defendant is indebted to Plaintiff for some amount based upon a series of informal financial transactions over a period of several years.

2.      Plaintiff presented evidence demonstrating that he loaned to Defendant or made payments to third parties on Defendant's behalf the following amounts:

| | | | |
|---|---|---|---|
| Exhibit A: | August 16, 1998 | Terita Coto | 1,600.00 |
| Exhibit B: | August 22, 1998 | Sufian Abdallah | 2,000.00 |
| Exhibit C: | August 29, 1998 | Sufian Abdallah | 2,000.00 |
| Exhibit D: | September 2, 1998 | Sufian Abdallah | 1,900.00 |
| Exhibit E: | October 20, 1998 | Sufian Abdallah | 3,000.00[1] |
| Exhibit G: | October 11, 1999 | Sufian Abdallah | 50,000.00 |
| Exhibit H: | November 2, 1999 | Kamal Abdallah | 60,000.00 |

3. Defendant conceded that Exhibits A, B, C, D, E, and G were "checks representing monies loaned to Mr. Sufian Abdallah." Transcript of Bench Trial at 5 (hereinafter, Transcript). Defendant's counsel and Defendant himself admitted that these amounts, totaling $60,500.00 represented loans by Plaintiff to Defendant. *Id*. at 10-11, 59. The monies were not a gift. *Id*. at 21.

4. By the uncontroverted testimony, Plaintiff had, prior to the transactions *sub judice*, on a number of occasions given financial assistance to Defendant through personal loans; these were informal oral transactions based upon the family relationship and were carried out by either a check or even cash, with no written promissory note or other documentation. *Id*. at 18-19.

---

1. Plaintiff withdrew his claim with respect to Exhibit F. Transcript at 13.

*Jaber v. Abdallah*
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 3

     5.     In the first transaction before the Court, Defendant asked Plaintiff to make a rental payment to Defendant's commercial landlord, Terita Coto, on Defendant's behalf in the amount of $1,600.00. Exhibit A; Transcript at 20-21. Plaintiff never had any direct dealings with Ms. Coto and, in fact, had never met her. Plaintiff acquiesced to the request to accommodate his cousin. Transcript at 18-21.

     6.     Plaintiff extended other small cash loans to Defendant during the period of August-October 1998. Exhibits B-E, respectively.

     7.     Defendant did not dispute his liability for repayment of the debts reflected in Exhibits A-E, inclusive. Transcript at 5-6.

     8.     In or about October 1999, Defendant requested a short-term personal loan in the amount of $50,000.00. This was a "hand-shake" loan. Exhibit G; Transcript at 22-24. Defendant did not dispute his liability with respect to this loan. Transcript at 5-6.

     9.     Approximately three (3) weeks later, on or about November 2, 1999, Plaintiff issued a check in the amount of $60,000.00, payable to Defendant's younger brother Kamal Abdallah. Exhibit H. Plaintiff claims that despite the name of the payee, the monies were advanced on behalf of Defendant and that he was responsible for repayment. Defendant contends that he had no participation with respect to that loan, that the transaction was strictly between his brother Kamal Abdallah and Plaintiff.

*Jaber v. Abdallah*
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 4

      10.      In support of his claim, Plaintiff testified that Kamal had lost approximately $1 million of Plaintiff's personal funds as a result of unauthorized and wrongful trading in the stock market.

> Q. (By Mr. Barry) Was there any particular incident involving your dealings with Kamaal Abdullah that would dissuade you from wanting to loan him directly any money in the future?
> A. Yes.
> Q. Explain.
> A. On several occasions, I had once loaned, more than once loaned Kamal funds directly. And then he was entrusted with a brokerage account of mine in which he had a power of attorney. Two deposits were made to that account, one for 500,000 and another for one million one hundred thousand dollars.
>           *          *          *
> Q. All right. So you're talking about a brokerage account that Kamal had access to?
> A. Right.
> Q, All right. Tell me what happened?
> A. He had a power of attorney to trade at my request.
> Q. Meaning –
> A. Buy and sell stock.
> Q. Meaning you would give him specific instructions?
> A. Right. He proceeded to do so without my authority, and lost the entire amount of money that we had deposited into the account.
> Q. How much?
> A. One million one hundred thousand dollars. One million dollars plus a hundred thousand dollars that I had loaned him, that he later signed a promissory note securing it by his two shares in both corporations.

*Jaber v. Abdalla*h
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 5

        \*    \*    \*

> A. Under no circumstances was I going to loan Kamal another dime after the funds that he had lost for me, ever. Let's make that clear. You play all the legal games you want, but I was never going to write him another check.
>
>   Sufian asked me to loan him $60,000 when he found out what his brother had done to me. Those funds were given to Sufian specifically to replenish other funds that were stolen out of the Tropix account or 1779 House.
>
>   And his other brother, Waleed, was coming to town to check that account, and he wanted to make sure that the funds were in that account.
>
> Q. Are you telling us what Sufian told you.
> A. Exactly.
> Q. All right.
> A. Because of that, I gave Sufian $60,000. . . .

Transcript at 26-36.

  11. Defendant denied asking Plaintiff to advance monies in November 1999 to his brother Kamal. *Id*. at 58.

  12. However, Defendant never contradicted Plaintiff's testimony regarding Kamal's alleged unauthorized trading and consequent massive losses of Plaintiff's funds and never specifically contradicted Plaintiff's testimony regarding Kamal's alleged improper expenditures of family corporation funds and Defendant's expressed need to replace those funds.

*Jaber v. Abdalla*h
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 6

      13.      The Court finds less than credible Defendant's testimony denying prior knowledge of his brother's alleged misdealings and essentially denying all prior or contemporaneous knowledge of the $60,000.00 loan. Defendant's testimony on the material issue of the timing of his knowledge of Kamal's alleged malfeasance with regard to Plaintiff's funds was somewhat contradictory, for example. Under direct examination, Defendant testified that he acquired this knowledge "way past the $60,000 loan that [Plaintiff] extended to Kamal." *Id.* at 56. But on cross-examination, Defendant stated:

> Q.    You talked about this [unauthorized trading by Kamal] before the loan of $60,000, correct?
> A.    I'm not sure. It may have been after, and it probably was after.
> Q.    But you're not sure?
> A.    No. I was not informed of the loan, you know, so, you know, it's just a date that I have now on the check, and it's hard to remember after seven years.

*Id*. at. 66-67.

      14.      The Court also finds less than credible Defendant's testimony denying all knowledge and involvement in the $60,000.00 advance to Kamal, while simultaneously attempting to claim a full and exclusive credit represented by a $40,000.00 cashier's check purchased by Kamal and made payable to Plaintiff. *Id.* at 67-69; Exhibit J. Defendant testified that Kamal "purchased the check on my behalf." Transcript at 69. However,

*Jaber v. Abdalla*h
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 7

Defendant never identified the source of funds used to purchase the cashier's check and that his own funds were the source of this claimed partial repayment of the $50,000.00 October 11, 1999, loan to Defendant.

    15.    The intent of the parties controls. "[I]n determining such intention the words of the promise, the situation of the parties and all the circumstances attending the transaction should be taken into consideration." *Millsaps, Hatchett & Co. v. Nixon,* 144 S.W. 915 (Ark. 1912); *accord: Plourd v. Scroggs*, 10 Ariz. App. 409, 459 P.2d 326 (Ariz. App. 1969) (holding that defendant's promise to pay lawyer for his brother's defense on capital murder charges was a primary obligation, and not a third party guaranty); *Hogan v. Colley*, 227 Ala. 505, 150 So. 501 (Ala. 1933) (holding that defendant's promise to physician to pay for daughter-in-law's treatment was intended as defendant's primary obligation). In the present case, the inference that Plaintiff would not rationally have loaned funds directly to Kamal under the circumstances and did not in fact intend to loan Kamal these funds directly is clear and compelling. The Court thus finds that Plaintiff wrote the $60,000.00 check to Kamal Abdallah at Defendant's request and on Defendant's behalf and that this transaction was not a direct loan to Kamal. Consequently, the Court finds that the $60,000 payment to Kamal was the original and primary obligation of Defendant.

*Jaber v. Abdallah*
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 8

    16.    Because the Court finds that the $60,000.00 loan was not a direct loan to Kamal, but, rather advanced at Defendant's request, the transaction does not fall within the scope of the Statute of Frauds. The Virgin Islands Statue of Frauds applies to "[a] special promise to answer for the debt, default, or misdoings of another person." V.I. Code Ann. tit. 24 § 244(2). A "[g]uaranty agreement is one in which the [party] agrees to answer for the debts of another in the event of default and which makes the guarantor equally liable as a primary debtor if default occurs." *Wing-It Delivery Services, Inc. v. Virgin Islands Comm'y Bank*, 47 V.I. 506, 512 n.7 (D.V.I. 2005). In the matter at bar, the Court has found that Defendant was primarily obligated to repay the loan, that is, a debtor and not a guarantor.

    17.    Even if the Court has erred with respect to the finding of Defendant as the primary debtor as opposed to a guarantor, the Court also finds that Defendant has waived any statute of frauds defense.

> Caselaw from the Third Circuit, as well as other circuits, clearly provides that a failure to raise the statute of frauds in the answer constitutes its waiver as an affirmative defense. *See Flight Sys., Inc. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (explaining that the statute of frauds "will not bar recovery if [the defendant] fails to raise the defense in its answer"); *see also Wineberg v. Park*, 321 F.2d 214, 218 (9th Cir. 1963); *Oedekerk v. Muncie Gear Works*, 179 F.2d 821, 824 (7th Cir.1950). Here, the defendants omitted the statute of frauds defense from their answer, thereby waiving the defense.

*Jaber v. Abdallah*
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 9

*Claytor v. Chenay Bay Beach Resort*, 79 F. Supp. 2d 577, 581-82 (D.V.I. 2000). Here, as in *Claytor*, Defendant failed to assert the statute of frauds as an affirmative defense in his answer. Consequently, Defendant has waived the defense.

18. Defendant has counterclaimed for an unrelated offset for liquor inventory suppled to one of Plaintiff's stores. Plaintiff stipulated in open court to a credit in the amount of $7,000.00. Transcript at 63.

19. In summary, Plaintiff proved by the preponderance of the evidence that he loaned directly to Defendant or made payments to third parties on Defendant's behalf under circumstances rendering Defendant primarily liable for repayment, the total amount of $120,500.00. It is uncontroverted that Defendant is entitled to offsets in the total amount of $47,000.00. Accordingly, the Court finds that Defendant is indebted to Plaintiff in the principal sum of $73,500.00.

20. The evidence demonstrates that no agreement to pay interest existed and that the parties intended that no interest be paid. Consequently, the Court will not award pre-judgment interest.

21. Pursuant to Fed. R. Civ. P. 54(d) and V.I. Code Ann. tit. 5 § 541 the Court also will award Plaintiff his costs and attorney's fees upon the Court's approval thereof.

*Jaber v. Abdalla*h
2002-CV-0155
Findings of Fact and Conclusions of Law
Page 10

ENTER:

Dated: December 19, 2007

_____/s/_____
GEORGE W. CANNON, JR.
U.S. MAGISTRATE JUDGE